FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 19, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| A.E., on behalf of W.A.E., a minor child, | No.   2:18-cv-00359-SMJ |
| Plaintiff, | **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff A.E. (hereinafter, Plaintiff), on behalf of minor child W.A.E., appeals the Administrative Law Judge's (ALJ) denial of W.A.E.'s application for Supplemental Security Income (SSI) benefits. Before the Court, without oral argument, are the parties' cross-motions for summary judgment, ECF Nos. 12, 13. Plaintiff alleges the ALJ improperly rejected Plaintiff's lay testimony and erred in evaluating the opinions of two medical providers and thereby wrongfully determined that W.A.E. was not disabled.[1] The Commissioner of Social Security

---

[1] Plaintiff's statement of the issues appears to allege that the ALJ's "domain findings" were not based on substantial evidence. *See* ECF No. 12 at 16–18. But the corresponding portion of Plaintiff's motion for summary judgment merely describes the regulatory framework governing a child's application for SSI benefits.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

(Commissioner) asks the Court to affirm the ALJ's decision.

Upon reviewing the administrative record, the parties' briefs, and the relevant authority, the Court is fully informed. For the reasons set forth below, the Court finds the ALJ did not err in assigning limited weight to the testimony of Plaintiff or to the opinions of two medical professionals regarding W.A.E.'s limitations. Accordingly, the Court denies Plaintiff's motion for summary judgment and grants the Commissioner's motion for summary judgment.

## BACKGROUND[2]

Plaintiff applied for SSI benefits for W.A.E. on May 4, 2015. AR 254–57.[3] The Commissioner denied the application on December 10, 2015. AR 141–43. The Commissioner denied Plaintiff's request for reconsideration on January 5, 2016. AR 147–49. At Plaintiff's request, two hearings were held before ALJ Marie Palachuk. AR 45–114. The ALJ denied Plaintiff benefits on December 19, 2017. AR 12–44. The Appeals Council denied Plaintiff's request for review on

---

*See id.* Plaintiff did not allege error in the ALJ's application of that framework. *Id.* The Commissioner's motion noted this, *see* ECF No. 13 at 2 n.1, and Plaintiff did not put forth substantive argument regarding the ALJ's domain findings in her reply brief. *See generally* ECF No. 14. Furthermore, the Court's review of the ALJ's domain findings, AR 31–37, discloses no obvious error. Accordingly, the Court disregards this portion of Plaintiff's motion.

[2] The facts, thoroughly stated in the record and the parties' briefs, are only briefly summarized here.

[3] References to the administrative record (AR), ECF No. 9, are to the provided page numbers to avoid confusion.

September 26, 2018. AR 1–5. Plaintiff then appealed to this Court under 42 U.S.C. § 405(g). ECF No. 1.

## DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In evaluating an application for benefits for an individual under eighteen years of age, the decision-maker uses a three-step sequential evaluation process to determine whether the claimant is disabled. 20 C.F.R. § 416.924(a).

Step one assesses whether the claimant is engaged in substantial gainful activities. If he or she is, benefits are denied. 20 C.F.R. § 416.924(b). If the claimant is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a severe medically determinable impairment or combination of impairments. 20 C.F.R. §416.924(c). An impairment or combination of impairments is not severe if it is a slight abnormality or combination of abnormalities that causes no more than minimal functional limitations. *Id.* If the claimant does not have a severe medically determinable impairment or combination of impairments, the disability claim is denied. *Id.* If the

claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.924(d). If the impairment meets or is medically or functionally equal to one of the listed impairments and has lasted or is expected to last for a period of at least twelve consecutive months, the claimant is presumed to be disabled. *Id.* The ALJ's assessment of whether an impairment is functionally equal to a listed impairment is based on six "domains," or "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains are:

    (i)     Acquiring and using information;

    (ii)    Attending and completing tasks;

    (iii)   Interacting and relating with others;

    (iv)   Moving about and manipulating objects;

    (v)    Caring for yourself; and,

    (vi)   Health and physical well-being.

*Id.* A child's impairment is functionally equal to a listed impairment if it results in a "marked" limitation in two domains or an "extreme" limitation in any one. *Id.* at § 416.929a(a). A limitation is "marked" if it interferes "seriously" with "[the child's] ability to independently initiate, sustain, or complete activities." *Id.* at

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 4

§ 416.926a(e)(2)(i). A limitation is "extreme" when it interferes "very seriously" with "[the child's] ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(3)(i).

## ALJ FINDINGS

At step one, the ALJ found W.A.E. had not engaged in substantial gainful activity. AR 18.

At step two, the ALJ found that W.A.E. had the following severe medically determinable impairments: generalized anxiety disorder; attention deficit hyperactivity disorder (ADHD); learning disorder; depressive disorder; speech disorder; developmental coordination disorder; failure to thrive, improved over time; chronic constipation; bilateral femoral retroversion, right greater than left; and history of spina bifida, corrected in childhood. AR 18.

At step three, the ALJ found that W.A.E. did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR 20–38.

In reaching this determination, the ALJ gave "significant weight" to the opinions of testifying medical experts Jerry Seligman, M.D. and Nancy Winfrey, Ph.D., *see* AR 27, as well as state agency medical consultants Grant Gilbert, Ph.D., Mark Magdelano, M.D., and Nevine Makari, M.D. AR 28. The ALJ gave partial weight to the opinions of Alexandra Carey, M.D., who conducted a childhood

disability evaluation of W.A.E. AR 28–29. The ALJ assigned little weight to the opinions of William Jackline, Ed.D., and Gregory Charboneau, Ed.D., both of whom evaluated W.A.E. AR 29–31.

## STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record, considered as a whole, to support the ALJ's decision. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla but may be less than a preponderance. *Id.* at 1110–11 (citation omitted). If the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court will not reverse an ALJ's decision if the errors committed by the ALJ were harmless. *Molina*, 674 F.3d at 1111 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

# ANALYSIS

## A.   The ALJ did not err in rejecting Plaintiff's testimony regarding W.A.E.'s symptoms

Plaintiff first contends the ALJ erred in evaluating the evidence of W.A.E.'s disability by discrediting the testimony of Plaintiff, W.A.E.'s mother. *See* ECF No. 12 at 18. Specifically, Plaintiff contends the ALJ erred in ascribing greater weight to statements made by W.A.E. to Dr. Jackline than Plaintiff's own testimony regarding W.A.E.'s impairments because W.A.E.'s statements "are not reliable assessments of his daily functions since he has been found to have significant psychological and intellectual impairments." ECF No. 12 at 18. Plaintiff argues that "it is doubtful [W.A.E.] would have be[en] able to give an accurate description of his daily activities," and thus Plaintiff's testimony was a more accurate source of information regarding W.A.E.'s true functioning. *Id.* Plaintiff also contends the ALJ erred by failing to explain the decision to discount Plaintiff's testimony. *Id.*

The Commissioner argues the ALJ properly rejected the testimony of Plaintiff, a lay witness, because it was at odds with the medical evidence in the record before the ALJ. ECF No. 13 at 8–9. For example, while Plaintiff testified that W.A.E. could not cook for himself, evidence in the record established that W.A.E. could and did prepare food for himself. *Id.* at 9 (citing AR 102, 596, 658 & 798). The Commissioner also points to inconsistency between Plaintiff's

testimony that W.A.E. suffered extreme fear and anxiety while the medical evidence indicated W.A.E. reported reduced anxiety and "NO stress." *Id.* (citing AR 772).

The testimony of a lay witness alone can never establish disability. 20 C.F.R. §§ 416.929(a), (b) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s)."). And to reject a lay witness's opinion, the ALJ need only cite a "germane" reason for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) "Inconsistency with medical evidence is one such reason." *Id.* (upholding ALJ's rejection of symptom testimony by claimant's spouse and friends where inconsistent with objective medical evidence).

The ALJ did not err in rejecting Plaintiff's testimony regarding W.A.E.'s symptoms because the ALJ noted several instances in which Plaintiff's testimony was inconsistent with the medical evidence in the record. For example, during a neuropsychological evaluation of W.A.E. by Dr. Charboneau, Plaintiff stated that W.A.E. "often has to be reminded to brush his teeth, take his medications, and change his clothes" and that W.A.E. will not brush his teeth unless Plaintiff stood next to him the entire time. AR 798. However, during Dr. Jackline's evaluation,

W.A.E. stated he "completed his personal hygiene tasks independently" which took him "approximately 5 minutes." AR 658. The ALJ noted this and other incongruities between Plaintiff's description of W.A.E.'s symptoms and the objective medical evidence before the ALJ. AR 26; *see also* AR 25–26 (noting inconsistency between (1) Plaintiff's testimony that W.A.E. could not prepare food for himself with W.A.E.'s statement that he prepared boiled hotdogs for himself, and (2) Plaintiff's testimony that W.A.E. experienced "extreme anxiety" and "obsessive fears" with W.A.E.'s statements that he did not experience "daily sadness, isolation, lack of interest, or stress, reported he was doing well, and [that] his anxiety was down.").

Plaintiff argues that because W.A.E. suffers intellectual and psychological deficits, the ALJ erred by discounting Plaintiff's testimony simply because it was inconsistent with what W.A.E. at times told doctors. ECF No. 12 at 18 ("Due to his intellectual deficits it is doubtful that W.A.E. would be able to give an accurate description of his daily activities to Dr. Jackline."). Plaintiff cites no authority for the proposition that a claimant's intellectual handicaps preclude an ALJ from considering the claimant's description of his or her symptoms. Moreover, the Court's review of the record discloses insufficient indicia of W.A.E.'s unreliability to find that the ALJ erred in crediting W.A.E.'s perception of his own symptoms. *See, e.g.*, AR 657 (reflecting W.A.E. accurately identified current President of the

United States, named three schools he attended, and accurately related that he was born in Portland, Oregon but moved to Spokane, Washington at age nine or ten). Although the Court would likely find the ALJ justified if she had tempered the weight of W.A.E.'s symptom testimony considering his intellectual deficits, substantial evidence also supports the ALJ's decision not to do so. Where the ALJ's decision amounts to a judgment call between two independently justifiable conclusions, the Court will not disturb the ALJ's decision. *Allen*, 749 F.2d at 579.

Likewise, the Court may not substitute its judgment for that of the ALJ and must uphold the ALJ's decision to at least partially reject Plaintiff's testimony of W.A.E.'s symptoms where that choice was the result of "germane" reasons. *Bayliss*, 427 F.3d at 1218. Because the Court's review of the record confirms the ALJ's observation that Plaintiff's testimony was at times inconsistent with the objective medical evidence and W.A.E's reports of his own symptoms, the ALJ's rejection of Plaintiff's testimony was not in error.

**B.    The ALJ did not err in discounting the opinions of Drs. Carey or Charboneau**

Plaintiff next alleges the ALJ erred by assigning limited weight to the opinions of Dr. Carey and Dr. Charboneau. ECF No. 12 at 19–20. Plaintiff contends the ALJ's bases for rejecting these opinions "do not constitute clear and convincing reasons" and that "[t]here are no specific and legitimate reasons that are supported by substantial evidence to reject their opinion[s]." *Id.* The Commissioner contends

the ALJ's decision to give limited weight to these doctors' opinions did not constitute reversible error. ECF No. 13 at 2–6.

For SSI appeal purposes, there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (non-examining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.*

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only for "clear and convincing reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d 821, 830–31).

### 1. The ALJ did not err in discounting Dr. Carey's opinion

Having reviewed the administrative record and the ALJ's decision, the Court

cannot find the ALJ erred in giving limited credence to Dr. Carey's opinion. The ALJ assigned Dr. Carey's opinions "partial weight" because in at least three instances, portions of those opinions were inconsistent with other evidence in the medical record. AR 28–29.

First, the ALJ noted that while Dr. Carey opined that W.A.E. "was markedly limited in his ability to acquire and use information" due to his autism and developmental delay, *see* AR 828, Dr. Jackline noted that W.A.E. "responded to all interview questions," attempted all the tasks Dr. Jackline asked him to perform, and was able to recall three unrelated nouns both immediately and after a short time, *see* AR 656–57. AR 29.

Second, the ALJ noted Dr. Carey's opinion that W.A.E. "exhibited a marked limitation in attending and completing tasks, as he was unable to complete a task without constant supervision, redirecting, clarification, and help," *see* AR 828, was inconsistent with Dr. Jackline's and Dr. Charboneau's opinions. AR 29. Dr. Jackline observed that he was "cooperative and compliant," attempted all the tasks he was assigned, "was not irritable or deterrent," and was not distracted by what he could see out a large window to his left. *See* AR 656. Dr. Charboneau opined that W.A.E. "showed little distraction during assessment and was cooperative and very hard working." *See* AR 799–800.

Third, the ALJ noted Dr. Carey's opinion that W.A.E. was markedly limited

in his ability to interact with others and act appropriately in all settings, *see* AR 829, was at odds with Dr. Jackline's opinion that W.A.E. was a verbally spontaneous, friendly, polite, cooperative individual who understood and responded appropriately to questions, *see* AR 655–66. AR 29.

Finally, the ALJ noted inconsistency between Dr. Carey's opinion that W.A.E. was markedly limited in his ability to care for himself, *see* AR 828, and Dr. Jackline's assessment that W.A.E. cooked for himself and independently completed self-hygiene activities like brushing his teeth, *see* AR 658. AR 29.

Because Dr. Carey's opinions were contradicted by Dr. Jackline's, the ALJ only needed to provide "specific and legitimate reasons" based on "substantial evidence" to assign those opinions reduced weight. *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d 821, 830–31). Having reviewed the administrative record and the ALJ's decision, the Court finds the inconsistencies identified by the ALJ were a sufficient basis to assign only partial weight to Dr. Carey's opinions, and the Court cannot therefore invalidate that decision.

**2.      The ALJ did not err in discounting Dr. Charboneau's opinions**

Plaintiff also alleges the ALJ erred in assigning little weight to the opinions of Dr. Charboneau. ECF No. 12 at 19. As with Dr. Carey, the ALJ noted several inconsistencies between the opinions expressed by Dr. Charboneau and others in the medical record.

First, the ALJ noted that while Dr. Charboneau, like Dr. Carey, opined that W.A.E. was markedly limited in his ability to acquire and use information, AR 835, Dr. Jackline wrote W.A.E. responded to all interview questions, attempted all the tasks he was asked to perform, and was able to recall three unrelated nouns both immediately and after a short time, *see* AR 656–57.

Second, the ALJ found Dr. Charboneau's opinion that W.A.E. was extremely limited in his ability to interact with others, *see* AR 835, inconsistent with Dr. Jackline's conclusion that W.A.E. was a verbally spontaneous, friendly, polite, cooperative individual who understood and responded appropriately to questions, *see* AR 655–66. AR 30.

Third, the ALJ noted that like Dr. Carey, Dr. Charboneau assessed W.A.E. as markedly limited in his ability to care for himself, *see* AR 836, although Dr. Jackline noted that W.A.E. cooked for himself and independently completed self-hygiene activities like brushing his teeth, *see* AR 658. AR 30.

The ALJ also noted that in at least two instances, Dr. Charboneau's opinions were internally inconsistent. AR 30. First, although Dr. Charboneau opined that W.A.E. was markedly limited in "attending and completing tasks," *see* AR 835, Dr. Charboneau also observed that W.A.E. exhibited steady concentration and strong attention, *see* AR 799–800, and Dr. Charboneau did not address the incongruity between his observations and his assessment of W.A.E.'s functioning. Second,

while Dr. Charboneau opined that W.A.E. was markedly limited in his ability to move and manipulate objects, *see* AR 836, he also observed that W.A.E. suffered no particular deficit in gross or fine motor skills and could walk and stand with ease, *see* AR 799. The ALJ also noted this finding was inconsistent with W.A.E.'s reported engagement with video games, Lego blocks, and drawing. AR 30.

The ALJ also noted that Dr. Charboneau dismissed the results of certain diagnostic tests without adequate explanation, which the ALJ found "raises questions concerning the reliability and supportability of his opinions." AR 30 (citing AR 806 ("[W.A.E.]'s pattern of responses was considered invalid.")). The ALJ credited also Dr. Winfrey's testimony that Dr. Charboneau's evaluative techniques were "often outdated, non-standard, or novel." AR 30. Finally, the ALJ observed that Dr. Charboneau "discarded long-standing diagnoses, such as ADHD, which had responded well to treatment . . . in favor of autism spectrum disorder, despite the latter having never been diagnosed before." AR 30 (*comparing* AR 596 (Dr. Carey noting ADHD diagnosis), 774 (Dr. Carey noting ADHD "improved") *with* AR 814 (Dr. Charboneau diagnosing autism spectrum disorder)). As a result of these concerns with the reliability of Dr. Charboneau's report, the ALJ assigned little weight to his opinions. AR 30–31.

The Court cannot find that the ALJ erred in doing so. As discussed above, Dr. Charboneau's opinions were contradicted by those of other medical

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 15

professionals in the record before the ALJ. As such, the ALJ only needed to provide "specific and legitimate reasons" based on "substantial evidence" to discount those opinions. *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d 821, 830–31). The Court concludes that the inconsistencies noted by the ALJ—both between Dr. Charboneau's opinions and those of other doctors, as well as within Dr. Charboneau's own report—combined with the inadequately explained rejection of certain test results and past diagnoses were sufficient to reject Dr. Charboneau's opinions, and the Court declines to vacate the ALJ's decision on that basis.

## CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

3. The Clerk's Office shall **ENTER JUDGMENT** in favor of **DEFENDANT** and thereafter **CLOSE** the file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 19th day of February 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 16